*Jury of merchants denied to try whether a conveyance was fraudulent.*

*Depeyster,* for the plaintiff, prayed for a special jury of merchants, and being asked what question would probably arise, answered the principal one was, whether a certain conveyance was not in fraud of creditors.

*By the Court.* This is not a mercantile question, but a matter of law.

SPECIAL JURY DENIED.

---

TALCOTT vs. M'KIBBEN & AL.

*If a case is left to persons chosen by the parties, whose report is to be the judgment, &c. they need not be sworn, and unless improper conduct be shewn, judgment will be entered, although they report not the grounds of their opinion, nor state any account.*

THIS case had been left, by consent, under a rule of court, to five merchants, agreed upon by the counsel, whose report was to be made the judgment of the court. They reported a round sum of $2,941 80 in favor of the plaintiff, without stating any account, or specifying any particulars. Upon a rule obtained upon the defendants, to shew cause, why the report of the referees should not be homologated, and become the judgment of the court, exceptions were filed to the report; and it was now argued upon the exceptions. On the part of the plaintiff, a witness was called, to prove that it was the usage of merchants to charge interest upon advances made.

*Duncan,* for defendants. This report is excep-  tionable in a variety of respects; and is at variance  with the general laws of the country, as well as the  particular acts of the legislature.

FALL 1812.
I. District.

TALCOTT
vs.
M'KIBBEN
& AL.

1. IT does not appear, that the referees were  duly qualified.

2. THEY have presented no stated account be-  tween the parties.

3. THEY have allowed interest upon an open  account.

1. BY the 20th section of the act, regulating  the practice of the superior court in civil causes,  the court, in all cases which shall appear to require  the investigation of long and intricate accounts, is  authorised to refer the statement of them to three  proper persons, to be chosen for that purpose by  the court, who shall examine the accounts, and the  vouchers and other testimony in support of them,  and state such accounts in their report to the  court; which referees, before they enter upon  such reference, shall take before some judge of the  court, or some justice of the peace, an oath, the  form of which is particularly prescribed in the act.  But in the present case, how does it appear, that  the referees have taken the prescribed oath? Be-  fore what judge or justice, has it been done?  Why has it not been annexed to the report, or at  least proven before to the court? Without this,

FALL 1812.
I. District.

TALCOTT
*vs.*
M'KIBBEN
& AL.

they were not qualified to act as referees, and their report is as invalid as the verdict of an unsworn jury.

2. THE act also requires a stated account, which requisition has been equally neglected. Indeed, the duty of referees is confined to thus stating an account, upon which the court will then act; and for this purpose only are they employed. They have, therefore, failed in the only object committed to their charge, and the only duty they had to perform. As it is, we are left entirely in the dark with regard to the grounds upon which they went, or the principles by which they were governed. When we ask for statements and facts, we are presented only with a round sum total in figures, without being informed of the items of which it is composed, or of the rule by which it was worked. I know that there is a former act of the legislature upon the subject of referees, and providing for the settlement of litigated accounts, where the same strictness is not required as in this one; but that equally exacts a stated account, for the information and guidance of the court. The referees, by these acts, are not resorted to as a tribunal, to apply principles of law; but as accountants, to audit accounts and to state balances; the court will then do its duty. But here, this duty is entirely taken off its hands, and it has left no

other office to perform, but that of blindly reject- <span>FALL 1812.</span>
ing or confirming their report.

I. District.

3. BY our law, interest is never allowed upon
unliquidated debts or open accounts; and even
upon liquidated and ascertained debts, if not stipu-
lated to the contrary, it runs, not from the date of
the debt, but from the period of the judicial de-
mand. But here, upon an open account, we find
the original sum increased by interest, which must
have been allowed, not only from the period when
the suit was instituted, but from the date of the
debt itself.

TALCOTT
*vs.*
M'KIBBEN
& AL.

*Ellery*, in reply. Had the counsel attended to
the manner in which this reference has been made,
and consulted the terms of the submission, much
time might have been spared in the discussion.
This case is not embraced by either of the acts
quoted. Those acts apply to referees, appointed
by the court, not to arbitrators chosen by the
parties; and they suppose long and intricate ac-
counts, the investigation of which would consume
too much of the time of the court, and which they
are authorised to leave to referees, as a species of
*experts*. But here were no long and intricate ac-
counts for investigation, neither were the referees
appointed by the court. Again, the last act, which
requires the oath of the referees and prescribes its
form, limits the reference to *three* persons—here,

Fall 1812.  by consent, *five* have been chosen. We do not
I. District.  then fall under this act; and as for the first act, no
Talcott  oath is required on the part of the referees;
*vs.*  therefore, supposing this case embraced by the
M'Kibben  first act, the want of qualification of the referees,
& al.  cannot be urged as an exception. But we find,
from their report, that they were duly qualified—
they there state, "after being first duly sworn:"
This is sufficient evidence of the fact; no further
can be legally required; and if not true, the con-
trary ought to be shewn. The referees ought to
be presumed to act according to law, without
their declaration to this effect, inserted in their re-
port; but we are now told, they are to be pre-
sumed to act against law, notwithstanding their
recorded declaration to the contrary, in express
terms. But no presumption is allowed to over-
turn an award. 2 *Atk.* 501. But again, is this
qualification of the referees, if not particularly re-
quired by law (and it is not by the first act) from
the nature of their office, indispensably necessary?
I think not: by electing this mode of terminating
their differences, the parties have chosen their own
judges; it is not like a struck jury, to which the
gentleman would assimilate it, but is a domestic
tribunal, resorted to by the parties, which is to
decide upon their case, unincumbered by techni-
cal niceties, and divested of forensic forms.

2. But, it is contended, that no account has been stated by the referees, and presented by them to the court—neither was it necessary or possible, as there were no accounts between the parties requiring either investigation or statement; no offset was set up by the defendants to the demand of the plaintiff, nor any conflicting claim opposed; a *case* was submitted to them for decision, not an *account* to be stated. The submission mentions the word *case*, thus excluding accounts —and upon this case, as appears from the pleadings, arose a question purely mercantile, viz. whether, by the usage of merchants, the credit allowed by the plaintiff, in the sale of certain merchandize consigned by the defendants, was a departure from his instructions, or such a departure as made him liable for the amount of the loss incurred by giving such credit? By their report, they found the negative; the account itself was never disputed, it consisted of specific and undenied items; the parties were at issue solely upon the principle now settled by the referrees; who, in stating the sum due by the defendants to the plaintiff, sufficiently stated the account.

3. But it is further urged, that they have allowed interest, and that this allowance is not according to law. But how does it appear that interest was allowed? Has any sum been set down for the rate, or as the amount of interest? Have

Fall 1812.
I. District.

Talcott
*vs.*
M'Kibben
& al.

FALL   1812.
I. District.

TALCOTT
*vs.*
M‘KIBBEN
& AL.

they not found for the plaintiff in round numbers, without specifying the items? How then can it be shewn, what part belongs to the principal, or what part makes the interest? But conceding, that interest was allowed, it remains yet to be shewn that this allowance was illegal or incorrect. The transaction between the parties was purely a mercantile one, not falling under the general principles of law, but to be construed according to mercantile usage. On this account, and for this reason, was this case committed to five respectable and distinguished merchants. Besides in the digest of the civil code, we find constant exceptions made in favor of mercantile usage; thus, in the case of the privilege of the vendors of property, it says, " nothing therein shall alter or affect " the established laws and usages of commerce," 470. The *lex mercatoria* exists entirely distinct ahd independent of the code.

THUS, upon an examination of this report, we shall find that it is not embraced by either of the acts of our legislature, though conformably to the provisions of both : that it is a voluntary submission by the parties, who agree that the report should be made the judgment of the court; that the report is consistent with the terms of the submission : of course, then, it can never be set aside, except for corruption, partiality, or misconduct, or a plain error or mistake upon the face of it. *Kyd,*

227, 3 *Atk.* 394, 5 *Atk.* 529. These are the prin-
ciples both of the civil and common law, from the
former of which the latter has borrowed them.

*By the Court.* This case is not to be com-
pared to that of a reference of accounts. The
parties have, by their own act, substituted judges
of their own choice. They have not required that
they should be sworn, and they have given them
full powers. By a mutual stipulation, the report
which they have made is to be the judgment of the
court. Surely, on good ground, the court would
inquire whether there has been any improper con-
duct; but, in the absence of any suggestion of
this kind, there must be judgment according to
the report.