ODOM, J.
 

 Plaintiff brought suit against the defendant for damages amounting to $50,083.33, setting up as a cause of action that defendant had breached its contract to deliver to plaintiff 1,550,000 pounds of cotton strips. The defendant, being a New Jersey corporation, was brought into court here by attachment proceedings. . ■ . .
 

 After issue was joined in the civil district court, plaintiff and defendant filed in court a' joint motion agreeing to submit their differences to amicable compounders and that their award should be made the judgment of the' court.
 

 ■On February 2, 1926, the parties signed an agreement in which it was stipulated:
 

 “That the matters and things evidenced in this suit shall be promptly submitted by the' parties for arbitration before a special committee of American Cotton Waste Exchange' of Boston, Massachusetts, which shall have the power of amicable compounders under the laws of Louisiana, and that the findings and award of a majority of said special committee shall be binding on and accepted by both of the parties to this suit and. shall be made the final judgment of this honorable court in this suit upon the filing in this record of a copy of said findings and awards duly certified and sworn to over seal, if any exists, of said American Cotton Waste Exchange by the President, Chairman or Secretary thereof.”
 

 It was ordered by the court that this 'stipulation be filed with the motion to submit.
 

 It seems that the American Cotton Waste Exchange, for some reason, refused to arbitrate the differences between plaintiff and defendant, whereupon the parties entered into another stipulation dated February 10, 1926, agreeing:
 

 “That the matters and things involved in this suit shall be promptly submitted by the parties for arbitration at the
 
 rooms of the American Cotton Waste Ewehtmge, Boston, Massachusetts.
 

 
 *968
 
 “Plaintiff shall name one arbitrator, the defendant shall name another arbitrator and these two arbitrators shall name an umpire, which three parties so named have the power of amicable compounders under the laws of Louisiana, and the findings and award of a majority of said three parties shall be binding on and accepted by both of the parties to this suit and shall be made the final judgment óf this honorable court in this suit upon the filing in this record of a copy of said findings and award duly certified and sworn to over the seal, if any exists, of said American Cotton Waste Exchange, by the President, Chairman or Secretary thereof.” (Italics ours.)
 

 ' The above agreements of February 2 and February 10 were entered into and signed by the parties in New Orleans. Subsequently on March 10, 1926, the parties, while in Boston, Mass., entered into a third and final stipulation, by which it was agreed:
 

 “That Henry F. McGrady of Fall River, Massachusetts, Joseph F. Hughes of Philadelphia, Pennsylvania, and Samuel II. Roberts of South Attleboro, Massachusetts, are to be the arbitrators as provided for in these agreements. It is further mutually agreed between the above named parties that in- the arbitration of this case, the evidence may be
 
 taken and the proceedings shall he conducted in a mercantile way, without regard to legal technicalities.
 
 The arbitrators shall determine all questions as to the conduct of the hearing and its scope. The arbitrators may call in experts in law, or any other matter, to testify at the hearing. The arbitrators may, if they consider it necessary, order that any witnesses at a hearing shall be examined on oath or affirmation. Stenographic record shall be made of such part of the proceedings as the arbitrators deem necessary. No hearing shall proceed in the absence of any one of the arbitrators and the vote of a majority of the arbitrators on any question shall be binding on the arbitrators.
 

 “The arbitrators shall make their decision in accordance with their own sense of equity in the case, taking into consideration such trade customs and usages as may be applicable thereto.”
 

 These three arbitrators began hearings shortly after their áppointment and continued until the end of April, 1926, when two of the three agreed upon an award of $51,449.93 in favor of the plaintiff.
 

 On February 1, 1927, the plaintiff presented to the civil 'district court in New Orleans, where the suit was pending, a detailed report of the findings of the arbitrators and prayed that defendant be ruled to show cause “why the above mentioned findings and award‘of a majority of said three parties should not be made the final judgment of this court.”
 

 The -rule issued as prayed for, and for answer why the rule should not be made absolute, defendant set out the following objections and irregularities:
 

 1. That said arbitration was unfair, inequitable, and not in accord with the submission.
 

 2. That the submission and the several amendments thereto do not set any time limit “within which the power of said amicable compounders may continue in force, and therefore the powers of said amicable compounders are limited by law and can only continue in force during three months from the date of the submission.”
 

 3. That the report of said amicable compounders was not submitted until September 7, 1926, more than five months after the matter was submitted to them.
 

 4. That neither of said amicable compounders nor the umpire took any oath before a
 
 *970
 
 judge or justice of the peace before examining into the differences submitted to them.
 

 5. That said amicable compounders exceeded their authority by allowing interest at 6 per cent., whereas plaintiff in its demand prayed for interest at 5 per cent.
 

 6. That one of the arbitrators resigned- before the findings and award were‘submitted to the court.
 

 Upon trial, the rule was made absolute and judgment was rendered against defendant accordingly. Defendant appealed.
 

 Opinion.
 

 1. Upon trial of the rule, the district court heard no testimony except that which related to the method of procedure had before the arbitrators. Their finding as to the amount due plaintiff by defendant was accepted by the court as correct and judgment was rendered accordingly.
 

 2. The law governing the appointment and the powers of judicial arbitrators and the effect of the .award made by them when appointed is found in section 3, c. 4 of the Oode of Practice, articles 441 to 462, inclusive, and in title 19 of the Civil Code, beginning with article 3099.
 

 Article 444 of the Code of Practice and article 3102 of the Civil Code provide that parties may submit their differences to arbitration.
 

 Code of Practice, art. 444, provides that: “When both parties to a suit pray that their dispute may be submitted to the decision of judicial arbitrators to be mutually appointed by such parties, the judge shall direct the cause to be referred to such arbitrators as the parties have selected to decide between them, either as arbitrators or as amicable compounders.”
 

 There are two sorts óf arbitrators.
 

 “The arbitrators properly so called ;
 

 ' “And the amicable compounders.” C. C. art. 3109.
 

 The arbitrators
 
 ought to determine as judges,
 
 agreeably to the strictness of the law.
 

 “Amicable compounders are authorized to
 
 abate something of the strictness of the laio
 
 in favor of natural equity. [Italics ours.]
 

 “Amicable compounders are, in other respects, subject to the same rules which are provided for the arbitrators by the present title.” C. C. art. 3110.
 

 Article 448 of the Code of Practice provides that “judicial arbitrators, so nominated,” must take an oath “before any judge or justice of the peace, to perform faithfully their functions.”
 

 The corresponding article in the Civil Code is 3111, which reads:
 

 “Before examining the difference to them submitted, the arbitrators ought to take an oath before a judge or justice of the peace, to render their award with integrity and • impartiality in the cause which is laid before them.”
 

 Code of Practice, art. 452, sets out that “judicial arbitrators” who, after having accepted the functions
 
 delegated to them, by the court,
 
 fail to execute their mandate “within the delay fixed by, the order of the court -nominating them, or within the further delay which the court may grant * * * may sentence them to pay all the costs which their neglect may have occasioned.”
 

 Civil Code,' art. 3105, provides that: “If the submission does not limit any time, the powo of the arbitrators' may continue in force during three months from the date of the submission, unless the parties agree to revoke it,” and article 3120 states that the arbitrators ought to determine the differences sub
 
 *972
 
 rnitted to them “as soon as possible and within the time-fixed by the submission.”
 

 The submission and power given to the arbitrators are put at an end “by the expiration of-the time limited
 
 either by the submission or by law,
 
 though the award should not yet bo rendered.”
 

 3-. The plaintiff in rule seems to have proceeded upon the theory that the award in this case was made by “judicial arbitrators” or “amicable compounders.” This is made apparent by the steps it took to have the award made executory.
 

 Article 3129 of the Civil Code provides that: “The award in order to be put in execution, ought to be approved by the judge; but this formality is only intended to invest the award with a Sufficient authority to ensure its execution and not to submit to the judge the examination of its merits, except in Case an' appeal is brought before him.”
 

 Article 456 of the Code of Practice reads as follows:
 

 “After the experts, auditors, or arbitrators, have sent their report or award to the clerk of the court by which they were appointed, the party wishing to avail himself of the same, may, on motion, call upon the adverse party to show cause, within ten days after the notice of such motion shall have been served on him, why such report or award should not be homologated.”
 

 .After the findings of two of the three arbitrators were filed with the clerk of the district court, the plaintiff, wishing “to avail himself of the same,” ruled defendant to show -cause why “the above mentioned findings and award of a majority of said three parties should not be made the final judgment of the court in this Suit.”
 

 4. If it be contended that the proceeding here brought, that is, the rule to homologate the findings and award of these arbitrators, and make them the final judgment of the court, is such as is contemplated by the law as found in the Codes, the rule must be discharged and the plaintiff’s demands, in so- fiar as the rule is concerned, rejected, for at least two reasons:
 

 First, the arbitrators were not sworn.
 

 Second, they did not return their findings and award into court within three months after the 'submission.
 

 Other reasons might be suggested, but these are sufficient. . These irregularities are fatal.
 

 5. Oases involving the points here raised have been before this court at intervals since 1812, and are too numerous to be cited. They are cited under appropriate articles of annotated codes and in the digests under the heading “Arbitration.”
 

 A reading of all the cases shows that, with one exception, the court has uniformly and consistently refused to sanction the aw(ard of arbitrators and to make such award the judgment of the court without inquiry into the merits, unless the arbitrators were sworn. The jurisprudence as settled is illustrated by the quoted extracts from the following cases:
 

 Bethea v. Hood, 9 La. Ann. 88:
 

 “Neither the submission nor the award make any mention of the arbitrators having been sworn; and two of these arbitrators, being called by plaintiff as witnesses in the case, testify that they were not sworn. The want of this formality is fatal to the awpxd.”
 

 Donovan v. Owen and Ihmsen, 10 La. Ann. 463:
 

 “The defendants took a rule on the plaintiffs to show cause why the report
 
 Should not
 
 be homologated, and judgment entered up against them in conformity with it. For an
 
 *974
 
 swer the defendant set up several objections, and among others that the arbitrators were not sworn as required by articles 3078 of the Civil Code, and 448 of the Code of Practice. * * * If on this appeal it could have been shown that all the formalities required by law * * * had entered into the submission, had been complied with, the defendants would have been entitled to a judgment in their favor for the award.
 
 Without noticing hoioever all of the informalities complained of, it is sufficient to state that it appears no oath, loas taken hy the arbitrators. This objection was sufficient to annul the award.”
 
 Citing Locke v. Dakin & Dakin, 15 La. 423, and Bethea v. Hood, 9 La. Ann. 88. (Italics ours.)
 

 Overton v. Alpha, 13 La. Ann. 558:
 

 “The arbitrators were not sworn. The award, therefore, cannot be enforced against the defendant.”
 

 In a much later ease, that of Mestier v. Chevalier Pavement Co., 108 La. 562, 32 So. 520, 521, the court said:
 

 “We have found no difficulty in arriving at the conclusion that the report of the amicable compounder is not authoritative, and to be taken as the basis of a judgment. It was annulled for good cause. The amicable compounder had not taken the requisite oath, and all needful facts were not furnished him to enable him to make a complete return.”
 

 Hart v. Dupont, 138 La. 15, 69 So. 858:
 

 “Where, in a submission to arbitration, no time is fixed within which the arbitrators are to give their award, they are allowed three months; and the award is null if made after the expiration of that delay, unless the time be extended by agreement of parties. In the absence of such agreement, the submission is at an end.” (Syllabus). Citing Lallande v. Bonny, 13 La. 462, and St. Martin v. Mestaye et al. 18 La. Ann. 320.
 

 The one occasion where an exception to the rule laid down in the Codes that the arbitrators must be sworn, is found in the case of Talcott v. McKibben, 2 Mart. (O. S.) 298. There the court, in a very short opinion, found at page 305 of 2 Mart. (O. S.) said:
 

 “This case is not to be compared to that of a reference of accounts. The parties have, by their own act, substituted judges of their own choice. They have not required that they should be sworn, and they have given them full powers. By a mutual stipulation, the report, which they have made is to be the judgment of the court. Surely, on good ground, the court would inquire whether there has been any improper conduct; but, in the absence of any suggestion of this kind, there must be judgment according to the report.”
 

 This case has never been followed. It has been cited only twice so far as we are able to find, once in Bach v. Slidell, 2 La. Ann. 626, on a point which bears no analogy to the ease at bar-, and again in Bethea v. Hood, 9 La. Ann. 88, where the court, after saying, “The want of this formality [the taking of the oath by the arbitrators] is fatal to the award,” said:
 

 “The case of Talcott v. McKibben, 2 Mart. (O. S.) 298, does not conflict in the least with this provision of the law. That was a casé left, by consent of parties, and an order of court entered upon such consent, to five merchants named in the order, whose report was to be made the judgment of the Court.
 
 And even in that case, although from the language of the decision it might be inferred that the oath of referees, under the circumstances, was not material, yet we find from' the argument of the counsel
 
 as reported, that the report it
 
 *976
 
 self stated that the referees were ‘first duly-sworn.’ ” (Italics ours).
 

 6. We have gone into the question of judicial arbitration at length, pointing out the requirements laid down by the Codes and the strict interpretation given to them by the court, because plaintiff in rule, by the proceeding which it took by rule to have the award of the arbitrators homologated and made the final judgment of the court, seems to have invoked the law with reference to Such arbitrations.
 

 If this was in fact a judicial arbitration, plaintiff has the right to have the award made the judgment of the court upon rule, provided that the formalities of the law were complied with. This it has attempted to do. But it develops that the arbitrators were not sworn and that the award was
 
 not made
 
 within three months from the date of submission. These informalities- are fatal to the award.
 

 It is for that reason, apparently, now suggested that this was not in fact a judicial arbitration, but one purely ex parte, extrajudicial.
 

 If that be true, these so-called arbitrators are but commissioners or referees appointed by the parties themselves to examine into the matters- in dispute between them and to report their findings to the court, and this so-called “award” is nothing more than their findings, which are not binding upon the court.
 

 The parties appointed by these litigants being no more than referees, were in no sense officers or representatives of the court and had no connection with it. Their appointment was neither authorized nor sanctioned by the court. It merely ordered the agreement to be filed with the motion.
 

 In the case of Merieult v. Austin, 3 Mart. (O. S.) 318, the court said:
 

 “There are but two ways of obtaining the decision of differences; one is, by applying to the constitutional judges; the other, by •submitting the difference to judges chosen by the parties themselves. For the manner of pursuing either of these two modes, provision is made by law. Parties are bound to follow the course of proceedings there established. If they choose to deviate from them, the constitutional authorities cannot lend them their assistance. What have the parties' done in the present case? They have come before the Court of the First District for a settlement of their dispute; but pending the suit, they agreed to refer the examination of their case to persons of their own choice, whose report should be made the judgment of the court. The question, then, is, does this amount to a submission which took the case from the court to lay it before arbitrators? — or is it nothing more than a reference, subject to the further approbation or disapprobation of the court? That it is not altogether such a reference as is provided for by the act regulating the practice of the late Superior Court, is very certain ; but it is equally true, that it bears as little resemblance to the submission or compromise by which the parties agree to have their disputes settled by other persons than their constitutional judges.”
 

 That case is on all fours with the one at bar, and we think ruling there made was eminently correct.
 

 As to what binding effect the agreement entered into between these parties, to submit their differences to these referees, and that their findings should be made the final judgment of the court, may have upon them, is not an issue before the court, and we express no opinion as to that. The only point at issue
 
 *978
 
 is whether the report made under the circumstances related can be made the final judgment of the court in the proceeding here brought, over the objection of defendant.
 

 This is not a suit on the award, but a proceeding to have the award homologated as though it had been made by judicial arbitrators. We hold that such can not be done.
 

 It is therefore ordered that the judgment appealed from be reversed; and further ordered that the case be remanded to the district court to be proceeded with according to law, costs of appeal to be paid by appellant, all other costs' to await final results.